IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE WIDMAR,

                Plaintiff,

      v.

SUN CHEMICAL CORPORATION,
PETER KLUG, CHARLES RAMSEY,
and THEODORE KNOTT,

              Defendants.

Case No. 11 C 1818

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Strike the Amended Complaint, the Parties' Cross-Motions to Dismiss, and Plaintiff's Motion to Compel.  For the reasons stated herein, the Motion to Strike is denied, Plaintiff's Motion to Dismiss Defendant Klug is denied as moot, Defendants' Motion to Dismiss is granted in part and denied in part, and Plaintiff's Motion to Compel is granted in part and denied in part.

## I.  BACKGROUND

Plaintiff George Widmar ("Widmar" or "Plaintiff") was a plant manager for 16 years at Sun Chemical Corporation ("Sun Chemical"), and at its predecessor company, Rycoline.  Evidently, both companies produced printing inks and pigments.  Plaintiff Widmar claims that he was an exemplary employee, but that the company began receiving complaints in 2009 in response to cost-cutting

changes that the company made to its product formulas. These problems, he alleges, were not attributable to manufacturing, his area of responsibility.

Plaintiff claims that he was repeatedly, publicly, and improperly blamed for the problems, and was fired in November 2009. He claims that after he was fired, he did not receive the severance that he expected — two weeks' salary in lieu of notice, one week's salary for each full year of service, and payment for unused vacation time. Although the allegations are not entirely clear, Plaintiff appears to allege in the Amended Complaint that he had a written contract for such a severance package while employed by Rycoline, and had been assured that that policy, not Sun Chemical's, would continue to apply to him once Sun Chemical took over the business. It is not clear who allegedly made those assurances. Plaintiff claims that other Sun Chemical employees over 40 years old were fired and not paid their severance, while some younger employees did receive severance packages. Plaintiff was told that he was terminated for cause.

After his termination in November 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC"), and later added a retaliation charge to that Complaint. He received a Right-to-Sue Letter, and filed this suit. He claims that his firing violated the Federal Age Discrimination in Employment Act of 1967 (the "ADEA," 29 U.S.C. §621, *et seq.*), the

Illinois Wage Payment and Collection Act (the "IWPCA," 820 ILL. COMP. STAT. 115/1, *et seq*.), and the common law of contract. He also claims that certain statements by Defendants Charles Ramsey ("Ramsey") (a Sun Chemical Technical Service Manager) and Theodore Knott ("Knott") (a Sun Chemical sales manager), to the effect that Widmar had been performing poorly and/or sabotaging the company, constitute defamation. Plaintiff specifically alleges that in November 2010, Knott told one Ron Petzel of Fisher Printing that Plaintiff had been sabotaging Sun Chemical's products.

Plaintiff filed this Complaint on March 15, 2011, and the Defendants answered on or before July 29, 2011. On January 25, 2012, Plaintiff filed a Motion to Compel certain discovery responses. On February 10, 2012, Plaintiff moved to dismiss then-Defendant Peter Klug ("Klug") under FED. R. CIV. P. 41(b), having concluded that he did not participate in the alleged defamatory statement by Theodore Knott. On February 22, 2012, Defendants moved to dismiss Counts III and IV of the Complaint, and to dismiss Count V as to Defendants Klug and Knott. This Court granted Plaintiff leave to amend his complaint on March 7, 2012. Two days later, Defendants moved to strike the Amended Complaint. Since then, the parties have finished briefing their respective motions to dismiss, updated the status of the discovery disputes, and Defendants Sun Chemical, Ramsey, and Knott have answered the Amended Complaint.

## II.  **LEGAL STANDARD**

On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint and draws all inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2). Plaintiffs need not make "detailed factual allegations," but must offer more than conclusions or "a formulaic recitation of the elements of the cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Naked assertion[s] devoid of further factual enhancement" will not suffice – a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

After a complaint and answer have been filed, a party may move for judgment on the pleadings under Rule 12(c), so long as the motion is not so late as to delay the trial.  FED. R. CIV. P. 12(c). While not all of the 12(b) defenses are available in a 12(c) motion, defendants can argue that a plaintiff failed to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(h)(2). Motions under Rule 12(c) are reviewed under the same standards as motions to dismiss under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009).

### III. <u>DISCUSSION</u>

The Amended Complaint, if accepted, moots several arguments in Defendants' Motion to Dismiss. Accordingly, the Court turns first to the Motion to Strike.

### A. Motion to Strike Amended Complaint

Fed. R. Civ. P. 15(a) dictates that once a responsive pleading has been filed, a party may amend their pleading only with the Court's permission or the other party's consent. However, courts take a liberal approach to amendments. *Stern v. U.S. Gypsum, Inc.,* 547 F.2d 1329, 1334 (7th Cir. 1977). Absent a showing of undue prejudice, bad faith, futility, or other substantial cause, amendments are generally permitted. *Foman v. Davis,* 371 U.S. 178, 182 (1962).

As noted above, Plaintiff sought leave to amend his complaint on March 7, 2012. Plaintiff's counsel explained that the amendment would fix a typographical error and some "pleading issues," and would moot some of Defendants' Motion to Dismiss. The Court granted Plaintiff's request. In addition to typographical corrections, the Amended Complaint includes several new factual allegations. *See, e.g.,* Am. Compl. ¶20 (adding the allegation that a Sun Chemical employee knew certain statements were false when he made them); *Id.* ¶29 (adding the allegation that when Sun Chemical bought Rycoline, Plaintiff was told that Rycoline's personnel policies would still apply to him).

Defendants now move to strike the Amended Complaint, calling the substantive amendments "untimely, prejudicial, futile, made in bad faith, and contradict[ory to] Plaintiff's sworn interrogatory responses[.]" Defs.' Mem. in Support of Mot. to Strike, 1. Defendants ask this Court to strike the complaint and require Plaintiff to either file another complaint with no substantive amendments, or to seek leave again to amend, so that Defendants can oppose that motion on the merits.

Defendants claim that the Amended Complaint contradicts Plaintiff's interrogatory responses, arguing that Plaintiff has added a claim for (or least allegations of) the breach of an oral contract, whereas throughout discovery Plaintiff maintained that the only relevant contract was written. Defendants also argue that in Plaintiff's initial disclosures, he did not list any statements or witnesses relating to the new allegations that he was assured that Rycoline's policies would still govern his employment. The Court notes, however, that Plaintiff's response to Interrogatory Number 4 ends with the phrase "Investigation continues," and that Plaintiff has agreed to supplement his discovery responses. Nor is the Court persuaded, as Defendant appears to be, that the amendment added a claim for a breach of an oral contract. (However, as noted below, many facts surrounding the alleged contract remain unclear.) Although Plaintiff should have supplemented his discovery responses at the earliest practicable time after identifying these

statements, the Court does not find the amendment to be in bad faith.

Defendants also argue that they are prejudiced by the amendments, because discovery is nearly complete. As Plaintiff points out, however, Defendants took the opposite position just a few weeks ago when they sought leave to file an amended answer to the original complaint. The Court finds that Plaintiff properly sought leave to amend, and that any additional discovery necessitated by the new allegations, while not negligible, is unlikely to be exceedingly burdensome. Accordingly, any prejudice to Defendants does not warrant striking the Amended Complaint.

Next, Defendants argue that the amendments are futile, because Plaintiff has already admitted that the document that he attached to his complaint was not a contract, and that he was subject to Sun Chemical's employment policies. These arguments, based on their motion to dismiss, are addressed below and are rejected for the same reasons here.

Finally, Defendants argue that the Amended Complaint merely stalls their dispositive motion. However, filing an amended complaint in response to a motion to dismiss under Rule 12(b)(6) — which is, in part, what Defendants' motion purports to be – is hardly unusual. Furthermore, any delay in amending the complaint is attributable in significant part to Defendants' unusual decision

not to file their motion to dismiss until many months after filing an answer.

The Court accordingly concludes that striking the Amended Complaint is not warranted. That being said, however, Plaintiff is to supplement his discovery responses as necessary before any remaining depositions and in any event no later than seven (7) days after the entry of this order. The Court will entertain requests for limited discovery extensions to address the new allegations.

## B. Cross-Motions to Dismiss Defendant Klug

Having accepted the Amended Complaint, the Court must determine its impact on the parties' Cross-Motions to Dismiss Defendant Klug. The parties agree that Klug should be dismissed, but vigorously contest whether the dismissal should be with prejudice. Contrary to Defendants' unsupported assertions, however, district courts in Illinois have treated dropping a defendant from an amended complaint as a voluntary dismissal pursuant to Rule 41. *See Cook v. Starling*, 104 F.R.D. 468, 469 (D.C. Ill. 1985).

Under Rule 41(a)(2), such a dismissal is "on terms that the court considers proper," and is without prejudice unless the order states otherwise. FED. R. CIV. P. 41 (a)(2). To determine whether dismissal with prejudice is appropriate, courts evaluate whether the dismissed defendant suffered "plain legal prejudice." *F.D.I.C. v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992). For example,

courts consider any time and effort that the dropped defendant expended in trial preparation, whether the plaintiff showed a lack of diligence, whether plaintiff sufficiently explained the need for dismissal, and whether the defendant had already filed a motion for summary judgment. *Id.* Defendants have not identified which, if any, of these factors support their argument that dismissal with prejudice is necessary. As discussed below, Defendants' motion for summary judgment (in Rule 12 clothing) is not dispositive here. Additionally, because Klug will likely remain a witness in this case, most trial preparation efforts were not in vain. Accordingly, the Court finds that dismissal with prejudice is unnecessary. If Plaintiff later seeks to re-add Klug as a defendant, however, he will need to make a compelling showing of good cause. Accordingly, Plaintiff's Motion to Dismiss Defendant Klug [DKT 42] is denied as moot, and Defendants' Motion to Dismiss Defendant Klug with prejudice is denied.

### C. Defendants' Motion to Dismiss Count III and Count IV, and Count V against Defendant Knott

As noted above, Defendants filed a Motion to Dismiss Counts III and IV, and Count V as to Defendant Knott (Klug now having been dropped). Defendants moved under Fed. R. Civ. P. 12 (b)(6), 12(c), and 12(h). Because the motion was filed well after Defendants' answers, however, the motion is governed by Rules 12(c) and (h) only.

Like motions to dismiss under Rule 12(b), motions under Rule 12(c) rely only on the pleadings — that is, courts ordinarily limit their inquiry to the four corners of the complaint. *Platinum tech., inc. v. Federal Ins. Co.,* No. 99 C 7378, 2000 WL 875881, at *2 (N.D. Ill. June 28, 2000). Indeed, if a party presents extraneous matter which the court does not strike, the court must deem the motion one for summary judgment and give the other side a chance to respond in kind. FED. R. CIV. P. 12(d). Rule 12(d) is mandatory. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993) (construing prior version of the Rule). There is a limited exception, however. If a plaintiff refers to a document in the complaint, and it is central to his claim, a defendant may introduce that document as part of a Rule 12 motion without converting the motion to one for summary judgment. *Id.* Documents that constitute "the core of the parties' contractual relationship" may qualify. *Id.* at 432.

### 1. *Exhibits to the Briefing on the Motion to Dismiss*

Both parties have attached declarations and documents to their briefing on Defendants' Motion to Dismiss. Neither, however, asks this Court to convert Defendants' motion into one for summary judgment. Accordingly, the Court will strike any impermissible exhibits, and disregard argument based thereon.

Defendants offer the declaration of Michael Kraus, Sun Chemical's Human Resources Manager. The declaration is largely a vehicle for its attached exhibits, a Sun Chemical "Employee Handbook Acknowledgment Form" signed by Plaintiff on May 15, 2008, and excerpts from that handbook. The Acknowledgment Form, like the handbook excerpt, states that all employment is at-will and that the handbook creates no contractual rights. The handbook also states that it is not comprehensive, and does not address individual applications or exceptions to the rules. The final excerpt, titled "Leaving Sun Chemical," is silent as to any severance pay.

Defendants argue that these excerpts are part of the pleadings because Plaintiff's contract-based claims are based on Sun Chemical's policies at the time he was fired. Defs.' Mem. in Support of Mot. to Dismiss, at 2 n.1. It is difficult to see what Defendants gain from the excerpts, in light of their disclaimers and the Court's obligation to construe all facts in the light most favorable to Plaintiff. In any event, however, neither complaint references Sun Chemical's handbook, and the amended complaint disavows the applicability of any Sun Chemical policy. Plaintiff instead alleges that he had a written contract for severance pay — which, reading the complaint as a whole, refers to a written contract with Rycoline. The handbook is not central to Plaintiff's

complaint.  The Kraus declaration and its exhibits are therefore stricken.

### b.  Declaration of Vicki DiDomenico

Defendants next offer the declaration of Vicki DiDomenico ("DiDomenico"), a Sun Chemical employee and former executive secretary to the Rycoline president.  In it, DiDomenico narrates her job duties and her version of Charles Ramsey's comments about Plaintiff, and explains that the written severance policy which Plaintiff attached to his complaint was something that she typed up in response to a subpoena in Plaintiff's 2003 divorce.  DiDomenico asserts that Rycoline had no written severance policy.  Her declaration exhibits include documents relating to the subpoena as well as the same one-page severance statement that Plaintiff attached to his complaint.

Ms. DiDomenico's account of her career and her interactions with Charles Ramsey must be stricken under *Venture Associates*. Furthermore, her account of how the written severance policy statement that Plaintiff attached to his complaint came to be likewise is inappropriate, as Plaintiff does not allege that that page is the contract at issue, nor does he reference his divorce. The only permissible part of her declaration appears to be the exhibit that was already attached to Plaintiff's complaint. Accordingly, the declaration and its attachments are either duplicative or inappropriate, and are stricken.

### c.  Plaintiff's Discovery Responses

Defendants also have attached several of Plaintiff's discovery responses from this case to their motion and reply.  It should go without saying that this material is inappropriate for a motion to dismiss.  It is stricken.

### d.  Declaration of Ronald Petzel

For the same reasons that Ms. DiDomenico's declaration was stricken, Ronald Petzel's narrative declaration of his interactions with Klug and Knott is stricken.

### e.  Affidavit of Ruth Major

As Ms. DiDomenico's declaration has been stricken, Plaintiff's counsel's affidavit regarding DiDomenico's recent deposition is stricken as irrelevant and outside of the scope of the pleadings.

### f.  Exhibits Attached to Defendants' Reply

At least two of the exhibits attached to Defendants' reply in support of their motion are inappropriate for the reasons listed above.  All, however, were identified for the first time in reply, giving Plaintiff an insufficient opportunity to respond to them. They are stricken.

### 2.  The Remainder of Defendants' Motion to Dismiss

Having stricken the inappropriate exhibits to the briefing and disregarded arguments based thereon, the Court considers the remainder of Defendants' motion.

*a. Count III*

Defendants have moved to dismiss Plaintiff's breach of contract claim against Sun Chemical. Paragraphs 63-67 of the Amended Complaint generally recite the elements required to prove a breach of contract claim under Illinois law. *See Baxi v. Ennis Knupp & Assocs.*, No. 10 C 6346, 2011 WL 3898034, at *8-9 (N.D. Ill. Sept. 2, 2011) (discussing Illinois' standard). However, the factual allegations in the complaint render unclear the basis for Plaintiff's claim for the breach of a written contract — for example, none of the ordinary "when, where, or how" of the contract formation between Plaintiff and Rycoline are alleged. *See* Am. Compl. ¶¶27, 28, 29. Furthermore, both the original and Amended Complaints assume, without corresponding factual allegations, that Sun Chemical assumed Rycoline's employment agreement with Plaintiff. *Cf. Wiggins Ferry Co. v. Ohio & M. R. Co.*, 142 U.S. 396, 408-09 (1892) (a party may become bound to a contract if, having knowledge of it, he deliberately interacted with the other party consistent with the contract terms); *W.P. Iverson & Co. v. Dunham Mfg. Co.*, 152 N.E.2d 615, 625 (Ill. App. Ct. 1958) (same).

Paragraph 29 of the Amended Complaint seems directed to the assumption issue. However, the paragraph says merely that when Sun Chemical bought Rycoline, and "throughout Mr. Widmar's employment with Rycoline," he was told "by various management-level employees that personnel policies and practices" from Rycoline would continue

applying to him once Sun Chemical took over. There is no indication whose employees made those statements. Although this Court reads the complaint favorably to Plaintiff, it will not inject factual allegations that Plaintiff failed to make — namely, that *Sun Chemical* provided any such assurance. Absent an allegation of express assumption or any other exception to the successor liability doctrine under Illinois law, see *Joseph Huber Brewing Co., Inc. v. Pamado, Inc.*, No. 05 C 2783, 2006 WL 2583719, at *8 (N.D. Ill. September 5, 2006), Plaintiff has not adequately pled his contract claim. The Court dismisses Count III without prejudice.

### b. Count IV

In Count IV, Plaintiff alleges that Sun Chemical violated the IWPCA, by failing to pay him the severance that he was owed in light of his 16-year career at the company. Am. Compl. ¶69. The IWPCA sets out timelines for the payment of "final compensation" to employees who separate from a company. 820 Ill. Comp. Stat. 115/5. The IWPCA defines final compensation as "wages, salaries . . . and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." *Id.* § 115/2. Illinois cases are clear that an "agreement" requires only a manifestation of mutual assent, not a formal contract. *See Skelton v. Am. Intercontinental Univ. Online*, 382 F.Supp.2d 1068, 1075 (N.D. Ill. 2005) (citing, *inter alia*, *Catania v. Local*

*4250/5050, Commc'ns Workers of Am.*, 834 N.E.2d 966, 971-72 (Ill. App. Ct. 2005)).

As noted above, Plaintiff has sufficiently pled that someone agreed to pay him the alleged severance package. He has not, however, alleged that that person could or did speak for Sun Chemical. Because the IWPCA only enforces parties' agreements, the IWPCA claim fails along with the contract claim, and is dismissed without prejudice.

### c. Count V as to Knott

The amended Count V alleges that Sun Chemical, Theodore Knott, and Charles Ramsey defamed Plaintiff. Defendants initially moved to dismiss Count V as time-barred. The Amended Complaint, however, corrected the date of the alleged defamatory statements to Ronald Petzel ("Petzel") from November 2009 to November 2010. Accordingly, Count V is not time-barred as alleged. 735 ILL. COMP. STAT. 5/13-201.

Defendants also moved to dismiss on the ground that Petzel's declaration denies that he heard any such statement. Neither this factual dispute (based upon a stricken declaration), nor Defendants' argument that Plaintiff cannot rely on hearsay in his defamation complaint (based upon summary judgment standards), holds water. Accordingly, the motion to dismiss Count V as to Defendant Knott is denied.

### D. Motion to Compel

In January, Plaintiff moved to compel responses to certain of his discovery demands. This Court continued that motion, which has been updated in light of the parties' discussions. The Court considers each dispute in turn.

First, Plaintiff has requested that Defendant identify "sources where [Sun Chemical] e-mails and electronic documents may be found." Plaintiff claims that he and his technical consultant have received inadequate information regarding Sun Chemical's backup tapes and IT policies. Defendants claim that they are currently seeking the requested information. Plaintiff's request appears to be reasonable and not burdensome, and is granted.

Second, Plaintiff requests that Defendant search the files of seven individuals (who are allegedly involved in testing Sun Chemical products) for documents responsive to his discovery requests. He argues that their information is necessary for him to show that the problematic products were not defectively manufactured. Defendants object that they have searched the documents of 11 people so far, turning over thousands of pages, and that adding seven more individuals' worth of documents would be unduly burdensome, expensive, and partially redundant. Defendants gave no estimate of time or cost of complying with this request, other than that it would be substantial. Given that lack of precision and the significance to this case of whether the products

were defectively manufactured under Mr. Widmar's supervision, the Court grants the motion.

Third, Plaintiff seeks broad discovery into product quality issues at Sun Chemical from 2007 to the present, including customer complaints, returns, recalls, records of formula changes, etc. He seeks this information for the entire territory in which he worked, including Illinois, Georgia, Texas, California, and New Jersey. All plants except those in Illinois and California were closed by November 2009, however, and Plaintiff has agreed to forgo discovery relating to those plants so long as Defendants do not later challenge Plaintiff's failure to consider them. Defendants note that they have produced the product return authorization logs (which include information about returned products and any tests done on them) for 2008 through 2010, as well as 3,000 pages of documents pertaining to quality issues in Chicago in 2009. Accordingly, Defendants argue that any other documents from 2008 or 2010 would be duplicative, and would unduly expand the 30-35 hours spent in producing the 2009 documents. However, limiting Plaintiff to 2009 gives him no baseline against which to compare the troubles of 2009. Accordingly, subject to Plaintiff's stipulation regarding geographic limits, Defendant shall turn over the requested documents, but only for 2008-2010.

Fourth, Plaintiff asks for all instructions from Sun Chemical's labs regarding what raw materials were needed, and the

records of what raw materials were actually purchased. Plaintiff intends to argue that the product problems attributed to Widmar were the result of either formula changes or a disconnect between the laboratories' needs and the materials they got. Defendants object that the complaint is silent as to raw materials, and that some information regarding 2009 raw material orders has already been produced. The Seventh Circuit, however, has emphasized that it is appropriate for Plaintiffs to develop their theories during discovery. *See, e.g.*, *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 813-14 (7th Cir. 2011) (affirming grant of summary judgment on a theory because it had not been presented during discovery). However, like the requests above, Defendant need only produce such records for 2008-2010.

Fifth, Plaintiff seeks the return authorization logs for 2007 and 2011 in addition to the 2008-2010 logs that Defendant has produced. Given that the discrimination case centers around the events in 2009, the Court considers the 2008-2010 logs sufficient. The request is denied.

Sixth, Plaintiff requests a copy of his own e-mail inbox and outbox from 2007 to the present. Defendants object that those files have already been searched, with thousands of pages being turned over. Defendants also dispute that copying the inbox would be easy, noting that employee e-mail is backed up to two servers (one of which is ultimately copied to backup tapes) and to two

additional e-mail archive servers.  Although some Courts will not require parties to search backup tapes, it appears from Defendants' explanation that the archive servers could be searched and copied with less effort.  Accordingly, the Court grants Plaintiff's motion to the extent that the files are archived on servers, not just backup tapes.  However, in order to reduce Defendants' burden, they need not provide those documents in both requested formats.  Plaintiff may choose to have the documents produced in either their native electronic format or converted to TIFF images, but Defendants need not pay to provide Plaintiff with both.  *See* FED. R. CIV. P. 34(b)(2)(A)(iii).

Seventh, Plaintiff seeks a list of Sun Chemical employees terminated in the relevant territory between January 2009, and the present.  Defendants have produced a list of 45 Illinois employees terminated in 2009, and state that no California employees were terminated in 2009, but argue that all terminations after 2009 are irrelevant.  Although producing all terminations from 2009 to the present seems unnecessarily broad, the Court grants Plaintiff's request for the 2010 termination data.

Eighth, Plaintiff seeks all Sun Chemical communications about him from 2007 to the present.  Defendants complied with this request for dates between January 1, 2009, and November 18, 2009.  Defendants object that Plaintiff was involved in many daily e-mails, and so Plaintiff's request is unduly burdensome.  The Court

generally agrees with Defendants; however, because the alleged defamatory statements occurred in November 2010, the Court will grant Plaintiff's request but only as to communications between July 1, 2008 and December 31, 2010.

Ninth, Plaintiff asks Defendants to identify all communications made concerning him, within Sun Chemical or otherwise, since his termination. This request is directed to Sun Chemical, Ramsey, and Knott. The Court grants the motion regarding statements known by the individual Defendants. The request is considerably more complicated for a corporation, however. Plaintiff has offered to limit the corporate request to anyone communicating with Sun Chemical customers, in addition to Ramsey, Knott, Klug, and Mark DeSandre. Defendants nonetheless object that many employees interact with customers, and so the request remains an unduly burdensome fishing expedition. The Court generally agrees. Plaintiff's request is therefore granted, only as to statements known to defense counsel and those individuals involved in this litigation — parties, witnesses, or declarants identified by either party.

Tenth, Plaintiff seeks basic information about people employed by Sun Chemical in the relevant territory from 2007 to the present. Defendants object that contrary to Plaintiff's claim, they have provided organizational charts and an employee list as of November 1, 2009. The Court agrees with Plaintiff that the

November 2009 list is insufficient to identify potential witnesses to the various alleged events. Accordingly, Defendants will provide a list of all Sun Chemical employees in the relevant territory during 2008 through 2010.

Eleventh, Plaintiff seeks copies of Sun Chemical's manufacturing job postings from August and September of 2009. Defendants have stated that no such advertisements occurred between October 2009, and April 2010, and argue that this information suffices to show whether Sun Chemical advertised for Plaintiff's replacement before firing him. However, Defendant has identified no difficulty in providing the requested data, and the motion is granted.

Twelfth, Plaintiff seeks the personnel files of defamation Defendants Ramsey and Knott. Defendants argue that they have turned over the personnel files relevant to the discrimination claim, but that personnel information is irrelevant to the defamation claim. However, as Ramsey and Knott are named parties whose history and credibility are doubtless relevant to the case, the Court concludes that their personnel files are relevant and grants Plaintiff's request.

## IV. **CONCLUSION**

For the reasons stated herein, the Court rules as follows:

1. Denies the Motion to Strike Plaintiff's Amended Complaint [DKT 61];

2.    Denies Plaintiff's Motion to Dismiss as moot [DKT 42];

3.    Grants in part and denies in part Defendants' Motion to Dismiss [DKT 46]; and

4.    Grants in part and denies in part Plaintiff's Motion to Compel [DKT 35].


**IT IS SO ORDERED**.

_____
       Harry D. Leinenweber, Judge
       United States District Court

**DATE:** 4/19/2012