```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

| | |
|---|---|
| **GEORGE WIDMAR,** | |
|       Plaintiff, | |
| | **Case No. 11 C 1818** |
|     v. | |
| **SUN CHEMICAL CORPORATION, CHARLES RAMSEY, and THEODORE KNOTT,** | **Hon. Harry D. Leinenweber** |
|       Defendants. | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motions to Compel and Defendants' various Motions for Contempt, Sanctions, Fees, and Costs. As motion practice drags on this case, this Court remains disappointed that counsel on both sides refuse to grant each other basic professional courtesies. Nonetheless, for the reasons contained herein, the Court denies former Defendant Peter Klug's Motion for Fees and Costs, grants in part and denies in part Defendants' Motion for Sanctions, grants in part and denies in part Plaintiff's Motion to Compel, and denies Sun Chemical's Motion for Civil Contempt and Sanctions. Discovery is extended for thirty (30) days from the date that this order is entered.

### I.    KLUG'S MOTION FOR FEES AND COSTS

Former Defendant Peter Klug ("Klug") has filed a Motion for Fees and Costs pursuant to 28 U.S.C. § 1927. That statute makes any attorney or other person admitted to practice "who so multiplies the

proceedings in any case unreasonably and vexatiously" potentially liable "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In the Seventh Circuit, such sanctions are appropriate if the movant can show subjective or objective bad faith – that is, actual ill will or conduct that is objectively on par with at least reckless indifference to the law, rules, or facts. *Dal Pozzo v. Basic Mach. Co., Inc.*, 463 F.3d 609, 614 (7th Cir. 2006). Maintaining a claim that is "without a plausible legal or factual basis and lacking in justification" can justify sanctions. *Walter v. Fiorenzo*, 840 F.2d 427, 433-34 (7th Cir. 1988). Mere negligence will not suffice, but extreme or extraordinary negligence may. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184-85 (7th Cir. 1992).

Essentially, Klug argues that Plaintiff and his counsel knew before the original complaint was filed that Klug had not made the alleged defamatory statements, but merely witnessed them. Klug points out that in his deposition, Plaintiff stated that before the complaint was filed, he learned from Ron Petzel ("Petzel") that Ted Knott ("Knott") had made the alleged statements, and that Klug had merely been present. Accordingly, Klug argues, when Plaintiff's counsel led this Court to believe that they dismissed Klug as soon as they understood his role, they misled the Court. Klug argues that Plaintiff's counsel's behavior was reckless, careless, and unconscionable. (Klug also argues that Plaintiff provided false interrogatory responses regarding the defamatory statements.

However, read as a whole, the interrogatory responses clearly set out Plaintiff's understanding that Knott made the alleged statements in Klug's presence.)  Klug claims to have been harmed by the stress of the suit, having to retain and meet with counsel, having a tarnished reputation, and by having to disclose henceforth that he has been sued.

Plaintiff, through counsel and his own affidavit, explains that he told his counsel the information he first learned – that Klug and Knott had both made defamatory statements.  When he learned otherwise shortly thereafter, he failed to convey that information to his attorneys because he misunderstood the law of defamation — he believed that Klug would still be liable, for being indirectly responsible for the false information.  Plaintiff and his counsel argue that when the misunderstanding became apparent during discovery, they promptly endeavored to dismiss Klug from the suit. Such a miscommunication should not be sanctionable, Plaintiff argues, noting that defense counsel evidently failed to inform Klug for several months that Plaintiff was trying to drop him from the suit.

The Court agrees that to the extent that the Motion is directed at Plaintiff himself, it is improper.  The statute clearly directs itself toward attorneys, not clients.  Further, the Court concludes that Klug has done nothing to demonstrate that this was anything more than an inadvertent failure of communication between Plaintiff and his counsel, which was promptly remedied when counsel became aware of it.  The Court sees no "extreme negligence" on the facts here.

Accordingly, the Court declines to impose fees and costs on Plaintiff's counsel under § 1927.

## II. DEFENDANTS' MOTION FOR SANCTIONS

Defendants ask the Court, pursuant to its inherent powers and Fed. R. Civ. P. 37 to "dismiss Plaintiff's claims with prejudice as a sanction for his numerous and repeated discovery violations and perjurious statements, and order Plaintiff to pay Defendants all fees and costs incurred as a result of Plaintiff's misconduct." Defendants primarily object that Plaintiff: (a) destroyed evidence by deleting the personal e-mail account he had used during his employment and destroying documents showing his post-termination income; (b) stole confidential and/or proprietary documents from Sun Chemical; and (c) perjured himself in his sworn answers to interrogatories.

If a party fails to follow discovery rules or a court order, they become subject to a variety of possible sanctions, ranging from being unable to use non-disclosed evidence up to dismissal of the case. Fed. R. Civ. P. 37(b, c). However, the Seventh Circuit calls dismissal an "extreme" sanction "that should be used only as a last resort in situations where the non-complying party displayed willfulness, bad faith, or fault." *Robinson v. Champaign Unit 4 School Dist.,* 412 Fed.Appx. 873, 877 (7th Cir. 2011). Before dismissing a case for discovery violations, courts should assess whether lesser discovery sanctions would suffice to cure any prejudice. *Id.* Even with potential perjury, the punishment should be proportional to the offense and harm done, and dismissal can be

excessive. *Allen v. Chicago Transit Auth.*, 317 F.3d 696, 702-703 (7th Cir. 2003).

Willfulness is a question of fact. *Maynard v. Nygren*, 372 F.3d 890, 892 (7th Cir. 2004). The Seventh Circuit has not definitively resolved, however, whether willfulness must be found by a preponderance of the evidence, or by clear and convincing evidence. *Watkins v. Nielsen*, 405 Fed.Appx. 42, 44-45 (7th Cir. 2010).

### A. Destruction of Evidence

Regarding the alleged destruction of evidence, Defendants object that Plaintiff deleted his old e-mail address, and cannot produce certain income records from after his termination. Although this case was not commenced until 2011, Defendants point out that Plaintiff was copied on litigation hold letters sent to Sun Chemical in January 2010, placing him on notice of his obligation to retain documents. Nonetheless, he deleted his old e-mail address two months later, and lost certain pay stubs.

Plaintiff argues that he changed his e-mail address for innocent reasons relating to his job search, and did not understand that the records would be destroyed until he subsequently tried to obtain them from Yahoo. He points out that, at deposition, Defendants only brought this up in the context of his alleged failure to mitigate his unemployment, and identify no other specific prejudice they have suffered from the loss. As to the lost income documents, he calls the loss merely accidental, in that they were misplaced somewhere in his home. However, he argues that Defendants suffer no prejudice,

because he has produced his tax returns for the years in question along with all relevant records that he could find.

A sanction of dismissal is disproportionate to these discovery failures. Defendants have not demonstrated, even by a preponderance of evidence, that there was anything approaching intentional, bad faith destruction of evidence. Where a party breaches a duty to preserve documents, courts should consider whether the other party is prejudiced, and whether the breach was willful or the result of bad faith or fault. *See Bryden v. Boys and Girls Club of Rockford,* No. 09 C 50290, 2011 WL 843907, at *2 (N.D. Ill. Mar. 8, 2011) *citing Faas v. Sears, Roebuck, & Co.,* 532 F.3d 633, 644 (7th Cir. 2008). Fault is a function of the reasonableness of the challenged conduct, and may be attributed for gross negligence, but not mere mistake or ordinary negligence. *Id.*

The Court finds nothing above ordinary negligence here. *Cf. Rhodes v. LaSalle Bank*, No. 02 C 2059, 2005 WL 281221, at *3-4 (sanctioning Plaintiff who destroyed relevant, discoverable notes during discovery). That being said, however, Defendants will be prejudiced at least in their ability to present evidence of mitigation and to refute Plaintiff's damages evidence. Accordingly, Plaintiff will not be allowed to testify or present evidence of any job applications or related activity before March 2010, unless he has produced evidence of a specific job application to the Defendants.

**B. Stolen Documents**

Defendants argue that between the summer of 2009 and his firing, Plaintiff took home stolen documents in order to prove that the product problems at Sun Chemical were not his fault. Defendants object that these documents were not timely turned over in response to discovery, and that even when they were, Plaintiff refused to mark them as confidential.

Plaintiff claims that he stole nothing, but instead brought some documents home as part of his job over the years, and was never asked to return or destroy them. Plaintiff argues that the rolling production is a function of counsel's growing understanding of the chemical processes at issue – the more counsel understands, more documents are deemed relevant and turned over. Finally, Plaintiff notes that copies of the documents have always been within Defendants' control, and adds that it is a good thing that Plaintiff kept them, because Defendants have failed to disclose those documents, even when they are relevant to Plaintiff's discovery requests. Plaintiff seeks fees and costs for having to respond to this motion.

Defendants have not presented evidence that Plaintiff retains documents he should not have had access to, nor have they alleged that Plaintiff was ever told to return any documents. *Cf. Rhodes,* 2005 WL 281221, at *4-5 (Plaintiff stole confidential documents from her supervisor's desk). Dismissal is not justified here. Nonetheless, Plaintiff has not addressed the failure to mark

documents as confidential and has taken a leisurely pace in turning over the documents he possesses. Accordingly, Plaintiff is ordered to mark all requested documents confidential, and to provide Defendants with a list of all documents in his possession relating to Sun Chemical (other than those turned over by Defendants in this matter). The Court has received too few details on these documents, and so reserves ruling on whether Plaintiff may use any late-disclosed documents. Each side will bear their own costs on this motion.

### C. False Answers to Interrogatories

Defendants also argue that Plaintiff has given several false answers to interrogatories. First, Defendants argue that Plaintiff's Complaint pleads a written contract, but that at deposition Plaintiff admitted that he never saw the Complaint's Exhibit E (which purportedly set out Rycoline's severance policy) before he was terminated. Second, Defendants argue that Plaintiff's interrogatory responses are false in that they claim that Angel Ruiz ("Ruiz") gave Plaintiff a list of people who assumed Plaintiff's former work duties, whereas at deposition Plaintiff testified only that Ruiz told him that several people were now handling his old duties, without giving names. Third, Defendants again argue that the interrogatory responses regarding Klug's involvement were false. Finally, they argue that Plaintiff lied in stating that his only employment since leaving Sun Chemical was to work for Core Components, given that he testified in deposition that he is self-employed by Universal

Merchandising and Logistics, and has done work for Core Components and Cattie Adhesives.

Plaintiff first responds that he never claimed that Exhibit E was the actual written contract with Rycoline/Sun Chemical. Second, as to the conversation with Ruiz, Plaintiff argues that Defendants misrepresent the record, as he stated in deposition that he did not remember his conversations as clearly as when he drafted the interrogatory responses. Third, Plaintiff incorporates his previous responses regarding Klug's participation. Finally, Plaintiff seeks sanctions for Defendants' manipulation of the record in this motion.

Regarding Exhibit E to the Complaint, it has been unclear to date whether that Exhibit was claimed to be the written contract, or only to document one of its terms. However, that lack of clarity is hardly perjurious, and Defendants' Motion is denied to that extent.

Regarding the conversation with Ruiz, Plaintiff testified at deposition that Ruiz gave him no names; Plaintiff only expressed a poor recollection of the conversation with Vicki DiDomenico ("DiDomenico"). Plaintiff's identifying Ruiz in his interrogatory responses as the person who explained how Plaintiff's former duties were distributed is therefore somewhat inconsistent with his deposition testimony. Nonetheless, the Court finds that this inconsistency (which may well be a sloppy conflation of DiDomenico and Ruiz in the interrogatory response) is a far cry from the sort of deliberate perjury that would warrant dismissal. *Cf. Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* 679 F.Supp.2d

894, 895-96 (N.D. Ill. 2010) (describing the sort of perjury that this Court believes would merit such sanctions). This is "the sort of discrepancy that juries routinely sort out." *Wallace v. McGlothan,* 606 F.3d 410, 427 (7th Cir. 2010). It does not merit sanctions.

The Court has already rejected Defendants' arguments about the Klug interrogatory responses. Although some parts of the response were not drafted as precisely as they could have been, read as a whole, there is no basis for finding that Plaintiff deliberately falsified his discovery responses.

Plaintiff does not respond to the claim that he failed to disclose his self-employment with Universal Merchandising and Logistics and his work with Cattie Adhesives. The Court takes this as a concession that the information was not provided. Plaintiff is ordered to turn over a complete listing of his post-termination employers within fourteen (14) days of the entry of this order, and to pay Defendants 1/6 of their reasonable fees and costs in bringing this motion. FED. R. CIV. P. 37 (c)(1)(A).

### III. SUN CHEMICAL'S MOTION FOR CONTEMPT AND SANCTIONS

Sun Chemical moves for a finding of civil contempt and sanctions against Plaintiff and his counsel for alleged violations of the protective order in this case, as well as an order barring Plaintiff from contacting any Sun Chemical customer and requiring him to turn over information on any such contacts that have already occurred. Sun Chemical also seeks fees, expenses, and damages from the alleged violations.

In 2009, Sun Chemical employees circulated a confidential e-mail describing a problem with a particular product (a defect which Plaintiff argues was wrongfully attributed to him and which triggered his firing). The e-mail listed customers who may have purchased a compromised batch of product, and asked that quiet inquiries be made with each customer. That e-mail was turned over in discovery. Recently, Plaintiff's counsel contacted several customers on that list, asking if they had issues with the product, who their sales representative was in 2009, and what, if anything, the customer was told about the product problem. Sun Chemical alleges that these phone calls violated the protective order in this case, but does not specify what impermissible information was disclosed or what harm it has suffered. It insists, however, that the inquiries were irrelevant and meant solely to harm Sun Chemical.

Plaintiff and his counsel argue that no improper information was disclosed, noting that the e-mail itself directed employees to quietly notify the customers of the problem. By definition, therefore, Plaintiff argues, asking whether the customer had experienced any problems could not disclose confidential information. Plaintiff's counsel provided an affidavit swearing that she shared no documents in these interviews, which lasted roughly five minutes by phone. The only mention of Plaintiff in that process, she says, was to explain her role in this litigation and to ask whether any comments were made about Mr. Widmar in communications stemming from the 2009 product problems.

The protective order in this case provides that the parties will ensure that any information marked confidential will be used only for specified purposes and disclosed only to authorized individuals. As relevant here, any confidential documents or information may be disclosed to potential witnesses only as provided in Paragraph 11. Paragraph 11 provides: "[m]aterial designated as CONFIDENTIAL may be shown to witness during, or in preparation for, the examination of such witness at deposition or pre-trial hearing," but only if the witness is employed by the party producing information, privy to the confidential document, or agrees to be bound by the protective order.

A litigant should not be held in contempt unless it has violated an unambiguous command. *Abbott Labs. v. Baxter Intern., Inc.,* 218 Fed.Appx. 523, 525 (7th Cir. 2007). Sun Chemical argues that by calling the customers listed in the e-mail, Plaintiff's counsel disclosed confidential information. It has pointed to no provision of the protective order, however, that prohibits Plaintiff's counsel from contacting potential witnesses identified through discovery, at least so long as counsel does not convey confidential information to those potential witnesses in violation of Paragraph 11. Despite the fact that defense counsel has evidently spoken with at least one such customer, Sun Chemical has not identified any sensitive information that was actually disclosed.

The Court agrees with Plaintiff that his counsel did not violate an unambiguous provision of the protective order. This Court has before it the sworn affidavit of an officer of the court stating that

no confidential information was shared in these brief interviews, and absent actual evidence to the contrary, the Court will not find contempt. Defendant's Motion is denied. To the extent that Plaintiff intends to use any of those customers or their statements, however, Plaintiff is directed to amend his discovery disclosures within five (5) days of the entry of this order.

### IV. **PLAINTIFF'S MOTIONS TO COMPEL**

Plaintiff has filed a second Motion to Compel, as well as a supplement to his original Motion to Compel. Defendants object to both filings as untimely, as they were filed on April 18, two days after discovery was set to close in this case.

As to the Second Motion to Compel, the Court would ordinarily agree with Defendants and deny the motion. However, when this Court issued its first ruling on Plaintiff's first Motion to Compel on April 19, 2012, it did so with the common sense understanding that the parties were continuing discovery until that production was complete. Furthermore, to the extent that, as Plaintiff alleges, Defendants agreed but then failed to produce certain documents, the Court finds good cause for the late motion. Accordingly, it will consider the Motion on the merits. To prevent this problem from recurring, the Court extends the discovery deadline until thirty (30) days from the entry of this order, for the limited purpose of completing discovery consistent with this ruling.

With regard to the supplement to the original Motion to Compel, Defendants add the objection that Plaintiff makes new demands but

failed to meet and confer with Defendants as required by Local Rule 37.2. Defendants' point is nearly self-defeating, however, as they proceed to note that the vast majority of Plaintiff's requests had been raised in the original Motion; the fact that these issues remain outstanding is a good argument that additional conferences may have been futile. *See generally, In re Sulfuric Acid Antitrust Lit.,* 231 F.R.D. 351, 356 (N.D. Ill. 2005). However, given that the Court is extending discovery, and that several of Plaintiff's requests are mooted in part by this Court's April ruling, the Court will deny Plaintiff's Supplemental Motion to Compel without prejudice until counsel have met and conferred regarding outstanding issues. Accordingly, only Plaintiff's Second Motion to Compel is considered below.

**A. Interrogatory No. 1: Sun Chemical Reports**

Plaintiff asks Defendants to identify and list any reports made regarding manufacturing, product quality and/or formula testing of Sun Chemical products, from 2009 to the present. In addition to the contents of each report, Plaintiff wishes to know who prepared it, how often, on what software, and for whom. Plaintiff argues that this information would drastically simplify discovery by allowing Plaintiff to selectively request only the relevant individual reports.

The Court agrees with Defendants that the April 19 order already obliges them to turn over product quality and testing reports from 2008-2010. As for manufacturing reports, Defendants should produce

a list of the *types* of reports that Sun Chemical routinely produces regarding product manufacturing, and their frequency and general coverage. Plaintiff may then seek copies of relevant reports from that list, limited to the 2008-2010 time frame.

**B. Interrogatory No. 2: Communications with Ron Petzel**

Plaintiff notes that after Ron Petzel told Plaintiff that Defendant Ted Knott had made defamatory statements about him, Petzel signed an affidavit to the contrary. Believing that the affidavit was prepared by defense counsel, Plaintiff seeks a list and description of all contacts with Petzel, either by Defendants or their attorneys. Plaintiff asserts that the request is not overly burdensome, and is critical to this case.

Defendants object that Plaintiff has not offered a sufficient reason to grant discovery from opposing counsel, and could have obtained this information by deposing Petzel. The Court agrees and denies the Motion, but gives Plaintiff leave to depose Petzel within thirty (30) days.

**C. Information Regarding the Relationship
Between Ed Toliopoulos and Debbie Schalke**

In deposition, Plaintiff's counsel inquired into whether Ed Toliopoulos ("Toliopoulos") (who allegedly took over some of Plaintiff's duties) and one Debbie Schalke ("Schalke") have a relationship outside of work. Schalke allegedly reports directly to Toliopoulos, and Plaintiff considers her a potential witness as to both the product quality issues and as to how Plaintiff's duties were

distributed after he was fired. Plaintiff anticipates that Schalke will be called as a rebuttal witness to support Toliopoulos' testimony, and argues that the fact finder should be made aware of any relationship between the two if she testifies. Defendants are correct, however, that although he was instructed not to, Toliopoulos answered the question (in the negative). Although he refused to answer follow-up questions, the Court will deny the Motion to Compel Additional Disclosures regarding any relationship to Schalke.

## V. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Denies Peter Klug's Motion for Fees and Costs [DKT 74];

2. Grants in part and denies in part Defendants' Motion for Sanctions [DKT 80];

3. Grants in part and denies in part Plaintiff's Motion to Compel [DKT 83];

4. Denies Plaintiff's Supplemental Motion to Compel without prejudice; and

5. Denies Sun Chemical's Motion for Civil Contempt and Sanctions [DKT 87].

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 5/16/2012