IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE WIDMAR,

                Plaintiff,

      v.

SUN CHEMICAL CORPORATION, a
Corporation; PETER KLUG, an
Individual; CHARLES RAMSEY, an
Individual; and THEODORE KNOTT,
an Individual,

                Defendants.

Case No. 11 C 1818

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Sun Chemical Corporation, Peter Klug, Charles Ramsey, and Theodore Knott's Motion for Summary for Judgment. For the reasons stated herein, the Court grants the motion.

## I.  BACKGROUND

In 1993, Rycoline Products, Inc. ("Rycoline") hired Plaintiff George Widmar (hereinafter, the "Plaintiff" or "Widmar") as a Plant Manager in Chicago. In 2004, Defendant Sun Chemical Corporation, ("Sun Chemical") acquired Rycoline. Both companies manufacture and sell pigments, inks, coatings, and other products for the printing industry.

Widmar was a Plant Manager for Rycoline and Sun Chemical until his termination in November 2009. While employed, Widmar was responsible for "[m]anaging all activities related to manufacturing

at [the Chicago and Adelanto Rycoline plants]" and was involved in various attempts to remedy product quality issues. Pl.'s Resp. to Defs.' Rule 56.1(a)(3) Statement of Material Fact at 6-8. At all times relevant to this dispute, Widmar was more than 40 years old.

In late 2008, Keith Roberts ("Roberts") became responsible for Rycoline manufacturing, and became Widmar's supervisor. Around this time, Sun Chemical was receiving a number of customer complaints about the quality of its products. Due to the large number of complaints, Roberts sought the assistance of Widmar to work "proactively with sales, purchasing, and the lab to efficiently solve the 2009 product quality issues." *Id.* at 9-10.

Apparently, Widmar's efforts during this time were not up to par, as Widmar admits his work performance was criticized repeatedly in September and October 2009. Such criticisms continued in November 2009 after Widmar failed to quarantine a product contrary to instructions, and failed to mix some of the Rycoline products properly. Notably, there was an incident in November 2009 where Roberts learned that Widmar was directing employees to mix one of the Rycoline products by "agitating it with a forklift," a procedure contrary to the product's mixing instructions. Defs.' Mem. in Supp. of Summ. J. at 9.

After learning this, Roberts grew upset and instructed Widmar to conduct a "complete review of all materials and [draft] a proper list of required procedures . . . for each [product]." Defs.' Ex. 51, ECF No. 194-5, Page ID# 8798. After the review was

completed, Roberts learned that there were other products, in addition to the one previously mentioned, that were not being mixed properly under Widmar's supervision.

Also around this time, Roberts believed Widmar was not communicating effectively. Specifically, Roberts was disappointed when he learned Widmar implemented a change in Sun Chemical's electronic inventory system and failed to notify all employees of the change.

On November 18, 2009, Roberts terminated Widmar for performance issues relating to the quality of the products being manufactured under Widmar's supervision. At the discharge meeting, Widmar was informed he would not receive a severance because his termination was performance related.

On May 17, 2010, Widmar filed a charge with the Equal Employment Opportunity Commission, (the "EEOC") alleging that his termination was the result of age discrimination. After he filed this charge, Widmar claims an individual informed him that Sun Chemical employees were accusing him of sabotaging Rycoline products intentionally. Widmar considered such comments defamatory and on February 8, 2011, filed another charge with the EEOC alleging retaliation and age discrimination.

Widmar filed his Complaint in this Court on March 15, 2011. The counts that remain include (1) an age discrimination claim against Sun Chemical in violation of 29 U.S.C. § 621; (2) a retaliation claim against Sun Chemical in violation of 29 U.S.C.

§ 621; and (3) a state law defamation claim against Sun Chemical, Defendant Theodore Knott and Defendant Charles Ramsey, two Sun Chemical employees, (hereinafter, collectively, the "Defendants"). Defendants have moved for summary judgment on all counts.

## II.  LEGAL STANDARD

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is material if it could affect the outcome of the case. *Id.*  If the moving party satisfies its burden, the non-movant must present facts to show a genuine dispute exists to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  To establish a genuine issue of fact, the non-moving party "must do more than show that there is some metaphysical doubt as the material facts." *Sarver v. Experian Info. Sys.*, 390 F.3d 969, 970 (7th Cir. 2004).

## III.  DISCUSSION

### A.  Age Discrimination

Widmar alleges Sun Chemical discriminated against him in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621.  Sun Chemical argues it is entitled to summary judgment because Widmar cannot establish a *prima facie* case.

The ADEA makes it unlawful for an employer to "discharge . . . or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a). To sustain a claim under the ADEA, a plaintiff must prove that age was a determining factor in the employer's decision to fire him. *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 371 (7th Cir. 1992). While age does not need to be the sole reason motivating an employer's decision to terminate, a plaintiff must establish that he would not have been fired but for the employer's intent to discriminate on the basis of age. *Id.* A plaintiff may prove age discrimination using either the "direct method" or the "indirect method." *See, e.g., Cerutti v. BASF Corp.,* 349 F.3d 1055, 1060–61 (7th Cir. 2003).

## 1. Direct Method

Under the direct method, a plaintiff must present direct or circumstantial evidence that establishes age was a determining factor in the employer's decision to terminate the plaintiff. *McCoy*, 957, F.2d at 371. Such evidence could include admissions or near-admissions by the employer that its termination decision was based on plaintiff's age. *See Lindsey v. Walgreen Co.*, 08 C 3547, 2009 WL 4730953 at *3 (N.D. Ill. Dec. 8, 2009) (explaining that an example of direct proof could be a statement from an employer such as "[y]ou're too old to work here.").

Widmar fails to present any direct evidence which suggests his termination was motivated because of his age. Instead, he argues that he can proceed under the direct method through the use of

"ordinary or mosaic circumstantial evidence."  Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. at 11.  There are three categories of circumstantial evidence that a plaintiff may rely upon to make such a showing:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer''s reason is a pretext for discrimination.

*Sun v. Bd. of Trustees,* 473 F.3d 799, 812 (7th Cir. 2007).

The Court finds the circumstantial evidence Widmar relies upon insufficient to establish a "convincing mosaic" that infers intentional discrimination.  *See Cerutti*, 349 F.3d at 1061 (holding that plaintiffs must present circumstantial evidence that "point[s] directly to a discriminatory reason for the employer's action").

First, Widmar claims he was falsely accused of many problems that related to his competency and this is evidence of discrimination.  As support for the alleged falsity, he relies on his own declaration and deposition.  Such evidence is not only self-serving, but also irrelevant in establishing that age was a motivating factor in his termination.  *See, generally*, *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986) (stating that a party "must present affirmative evidence in order to defeat a properly

supported motion for summary judgment."); *see also*, *Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1999) (a party opposing summary judgment "must do more than challenge the judgment of his superiors through his own self-interested assertions").

Indeed, the only affirmative evidence Widmar presents to demonstrate that product performance problems were not his fault are a handful of emails exchanged between various employees of Sun Chemical that indicate that one of the issues Sun Chemical was having with one of its products was the result of its purchasing department buying the wrong item to test the product. *See* Pl.'s Ex. A, Group 1. Widmar contends that because the wrong tester was being used the results indicated that there were quality problems, when in fact there were none.

Defendants do not dispute that this information was brought to Roberts' attention prior to Widmar's termination. *See* Defs.' Resp. to Pl.'s Second L.R. 56.1 Statement of Additional Fact at 5. However, Defendants list a number of other quality problems for which Widmar was responsible that were unrelated to the one Widmar references. Notably, one of the other product problems related to one of Sun Chemical's "best-selling fountain solutions," the Print Easy 4600 and the Advanced Edition 30B. Pl.'s Resp. to Def.'s L.R. 56.1(a)(3) Statements ¶¶ 20-21, ECF No. 192, Page ID# 8250. Widmar admits that problems with these products were estimated to have cost Sun Chemical four million dollars in lost sales and

admits that he was a member of the Rycoline Leadership Team that was responsible for "identifying and solving product quality issues." *Id.* at ¶¶ 21-24, ECF No. 192, Page ID# 8250-8251. Thus, the Court does not find Widmar's evidence that he was blamed unfairly for Sun Chemical's product problems convincing to establish a "convincing mosaic of intentional discrimination." *Cerutti*, 349 F.3d at 1061; *see also, Schultz v. General Elec. Capital Corp.*, 37 F.3d 329, 334 (7th Cir. 1994) (affirming summary judgment to the employer where the plaintiff claimed "any performance problems were not his fault.").

The next piece of evidence Widmar presents is the testimony of Michael Kraus ("Kraus"), one of Sun Chemical's Human Resources Managers. Widmar claims Kraus' testimony that it was "odd" that a sixteen-year employee with no prior complaints was being terminated for performance reasons is evidence of intentional discrimination. Pl.'s Ex. C at 58, ECF No. 193-3, Page ID# 8337.

However, after reviewing the entirety of Kraus' testimony, the Court does not find it establishes a convincing mosaic of intentional discrimination. Kraus testified:

> I asked [Roberts] what were some of the reasons [for Widmar's performance problems] and he elaborated on various reasons. It included — there were batches being made that required premix and George [Widmar] was unaware that a premix was necessary for those batches. There were batches that were manufactured at Adelanto, California, which George [Widmar] had responsibility for, that were manufactured on spec, but the same material manufactured at Chicago, was not on

spec. George [Widmar] had ordered some filter
size changes without advising. SAP, which is
our computer software, the program just wanted
to make a change, advised George [Widmar],
made the change, but George [Widmar] had not
advised anyone else, so others had difficulty
accessing information. There was a batch that
– a temper product that's manufactured in
Chicago that George [Widmar] had mixed by
having the production operators drive it
around on a forklift, while in Adelanto it was
mixed via a mixer . . . Those are the items I
recall.

*Id.* at 54-55, ECF No. 193-3, Page ID# 8336.

Kraus also testified that Sun Chemical's Vice President of Sales, Mr. Mark DeSandre, concurred with Roberts, and stated that Roberts produced email communications to support his allegations. *Id.* at 55-56. Accordingly, the Court does not find Kraus' stray remark that Widmar's situation was "odd" points to a discriminatory reason for Widmar's termination. *See Markel v. Board of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002) (statements which require inference of discriminatory animus are insufficient to demonstrate direct discrimination); *see also*, *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) ("isolated comments that are no more than stray remarks in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus").

The most persuasive evidence Widmar presents is his denial of severance pay. In response to this evidence, Sun Chemical avers that it does not have a formal or written severance pay policy, but that "as a matter of practice it usually provides severance pay in

exchange for a general release of claims only to employees who are involuntarily terminated for reasons unrelated to performance." Pl.'s Resp. to Def.'s L.R. 56.1(a)(3) Statements of Fact at 23. Sun Chemical explains that Widmar did not receive severance pay because he was terminated for performance reasons.

Widmar disputes that Sun Chemical does not have a formal policy with respect to severance pay. Yet, as support he cites email communications which affirm Sun Chemical's position that it only provides severance to employees who are terminated for reasons other than performance. *See* Pl.'s Ex. K, Group 8 (an email to a former employee who was terminated due to a reduction in staff, outlining the employee's severance package and stating that the employee's "Agreement Concerning Confidentiality" remained in effect.). Because of this, the Court finds Sun Chemical's statement regarding its unwritten, informal policy on severance pay undisputed. *See Ford v. Lumbermens Mut. Cas. Co.*, 197 F.R.D. 365, 365 (N.D. Ill. 2000) (stating that Local Rule 56.1 requires parties to point to specific undisputed record evidence which supports their positions to assist the Court in finding areas of dispute).

Moreover, Widmar admits that from 2007 to 2010, fifteen employees were terminated for unsatisfactory performance and only four were paid severance, while the other eleven did not. Widmar does not dispute that three of four who were paid severance were employees over the age of 40, and that all four employees did not report to Roberts. *See* Pl.'s Resp. to Defs.' L.R. 56.1 Statement

of Material Fact at 24. In light of these admissions, the Court does not find this evidence constitutes evidence of similarly situated employees outside the protected class receiving systematically better treatment or evidence of discriminatory intent. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (stating that a coworker is similarly situated if he or she is directly comparable to plaintiff in all material respects, including whether the employees "dealt with the same supervisor.").

In addition to this, the Supreme Court has held that a plaintiff who proceeds under the ADEA claiming discrimination with respect to compensation, terms, benefits or privileges of employment must prove that "*age actually motivated the employer's decision.*" *Kentucky Retirement Systems v. E.E.O.C.*, 554 U.S. 135, 135-36 (2005) (emphasis in original). The Court reasoned that while salaries, pensions and other benefits are usually dependent on an employee's age or years of service, the two concepts are "analytically distinct." *Id.* The Court here does not find Widmar has established that Sun Chemical denied him severance pay because of his age.

Thus, the Court does not find Widmar's circumstantial evidence illustrates a convincing mosaic of intentional discrimination. Therefore, in order to avoid summary judgment, he must proceed under the indirect method.

## 2. Indirect Method

Under the indirect, burden-shifting method originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must first establish a *prima facie* case of discrimination to proceed. After a plaintiff makes this showing, the employer must then produce a legitimate, nondiscriminatory reason for the adverse employment action to avoid liability. *Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 326 (7th Cir. 2002). Assuming an employer offers a nondiscriminatory reason for the adverse action, the burden shifts back to the plaintiff to demonstrate that the employer's stated reasons are merely pretextual. *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 750-51 (7th Cir. 2006).

A *prima facie* case under the ADEA is established by showing that the plaintiff (1) is a member of the protected class (age 40 to 70); (2) was performing his job sufficiently to meet his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) had similarly situated employees outside of the protected class receive more favorable treatment than he did. *Everroad v. Scott Truck Sys.*, 604 F.3d 471, 477 (7th Cir. 2010).

In this case, it is undisputed that Plaintiff was more than 40 years old when he was terminated. Additionally, there is no doubt Widmar suffered an adverse employment action when Sun Chemical terminated his employment on November 18, 2009. Accordingly, the remaining elements Widmar must establish are that his job

performance met Sun Chemicals legitimate expectations and that similarly situated employees under the age of 40 received more favorable treatment than he did.

Sun Chemical argues Widmar has failed to establish these elements. Widmar disagrees. He claims he has presented sufficient evidence to demonstrate both elements and also argues that his circumstances require a different analysis under *McDonnell Douglas.* Specifically, Widmar contends he has propounded sufficient evidence to raise an inference that Sun Chemical applied its legitimate expectations in a disparate manner. As such, he argues that the Court should merge the second and fourth prongs of the *McDonnell Douglas* analysis and allow him "to stave off summary judgment . . . and proceed to the pretext inquiry." *Id.* at 19 (citing *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007)). While the Court is not entirely convinced Widmar has presented sufficient evidence to raise such an inference, it gives him the benefit of the doubt and proceeds to the pretext inquiry.

"Pretext is more than a mistake on the part of the employer; it is a phony excuse." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). To establish pretext at summary judgment, "non-movants must produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for discharge." *Schultz v. General Elec. Capital Corp.*, 37 F.3d 329, 334 (7th Cir. 1994). "In assessing whether the employer's stated reasons for an employment action are pretextual, the inquiry should

focus on whether the decisionmaker honestly believed that terminating the plaintiff was the appropriate decision at time the decision was made." *Pinkert v. Journal Sentinel, Inc.*, No. 11-C-392, 2012 WL 3113173 at *5 (E.D. Wis. July 31, 2012).

Here, Widmar claims Sun Chemical's reason for termination was pretextual because the cited performance problems were not his fault. He argues that Sun Chemical's pretextual reasons are illustrated by the fact that Roberts and Sun Chemical learned that one of the quality control problems was the result of Sun Chemical's purchasing department and not Widmar. Pl.'s L.R. 56.1 Statements of Fact at 3. As previously stated, the Court does not find this evidence points to a discriminatory motive. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838-39 (7th Cir. 2009) (pretext must be "more than just faulty reasoning or mistaken judgment").

The Court finds Widmar's arguments regarding his lack of prior complaints equally unavailing. *See Smith v. Allstate Ins. Co.*, No. 99-C-906, 2002 U.S. Dist. LEXIS 5915 at *20 (N.D. Ill. Mar. 29, 2002) (stating that evaluations given from different supervisors do not establish that an employer is enforcing its policies in a disparate fashion or establish pretext since "[d]ifferent supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important."). It is undisputed that Roberts became Widmar's supervisor in late 2008 and that his job was to fix a number of product performance issues. *See* Pl.'s Resp.

to Defs.' Statement of Material Fact at ¶¶ 13, 14.  Thus, the Court does not find the lack of prior complaints Widmar received under a different supervisor indicative of intentional discrimination.

Next, Widmar argues that he can establish pretext because Sun Chemical changed its reasons for his termination.  Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. at 20.  The Court finds this allegation meritless.  The record is void of any evidence which suggests that Sun Chemical changed its reason for terminating Widmar.  Instead, Sun Chemical has maintained that Widmar was terminated for performance reasons.

Finally, Widmar claims Sun Chemical's reasons for termination were pretextual because it failed to follow its own internal policies.  Specifically, he contends that Sun Chemical's failure to provide him a performance review or implement a performance improvement plan prior to his termination is an internal inconsistency.  He argues that this is Sun Chemical's "normal practice for addressing issues that are "potentially correctable.""  Pl.'s L.R. 56.1 Statements of Additional Fact at 6 ¶ 24.  However, the evidence Widmar relies on as support states that it is Sun Chemical's policy to examine disciplinary situations "on a case-by-case basis [to] determine if a PIP [performance improvement plan] is an appropriate course of action."  Pl.'s Ex. C. at 49, ECF No. 193-3, Page ID# 8334.  Additionally, Widmar does not present evidence of similarly situated, substantially younger employees being placed on a PIP prior to termination.  In light of this, the

Court does not find Widmar can establish that Sun Chemical failed to follow its own internal policy regarding performance reviews or performance improvement plans. *See Lyon Fin. Servs., Inc. v. Bella Medica Laser Ctr., Inc.*, 738 F.Supp.2d 856, 859 (N.D. Ill. 2010) (stating that denials which do not "directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1").

Widmar also points to DeSandre's attendance at his termination meeting as evidence of an internal inconsistency. Widmar claims DeSandre's presence at the meeting was contrary to standard procedures at Sun Chemical since DeSandre was not one of Widmar's direct supervisors. Sun Chemical does not dispute DeSandre's presence at the termination meeting, nor the fact that DeSandre was not Widmar's supervisor. Defs.' Resp. to L.R. 56.1 Statement of Additional Facts at 15. However, Widmar fails to present any evidence which suggests that it was Sun Chemical's policy to only allow direct supervisors to attend an employee's termination meeting. Moreover, even if he presented such evidence, the Court does not find this relevant in demonstrating that Sun Chemical's reasons for Widmar's termination were a guise for age discrimination. *See Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1063 (7th Cir. 2008) (stating that "[s]howing pretext requires proof that the defendant's explanation is unworthy of credence.").

Widmar also asserts that Sun Chemical failed to follow its own internal policies with respect to paying him a severance. Widmar claims that since he did not receive a severance and other employees who had been fired for performance had, this is evidence of discrimination.

Sun Chemical responds that while it does not have a formal policy on paying severances, it "usually does not provide severance pay to employees who are terminated for unsatisfactory performance." Defs.' Reply at 9 citing Defs.' Ex. C (Kraus Dec.) at ¶ 23. While Sun Chemical admits it has made four exceptions to this general rule in the past three years, none of those exceptions involved employees similarly situated and substantially younger than Widmar. *Id.* at 9 n. 18. In fact, three of the four former employees would have been members of same protected class as Widmar at the time of their termination. *See* Pl.'s Resp. to Def.'s L.R. 56.1(a)(3) Statements of Material Facts at 24, ¶ 64. Thus, the Court does not find this evidence of discriminatory pretext. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 643 (7th Cir. 2008) (finding that "[a] pattern where the protected-class members "sometimes do better" and "sometimes do worse" than their comparators is not evidence of age discrimination").

The final piece of evidence that Widmar claims establishes pretext, is the fact a significant amount of his job responsibilities were assumed by employees outside the protected age group. He argues this is evidence that Sun Chemical treated

similarly situated employees who were not members of the protected class more favorably. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007) (when a plaintiff is fired because of a reduction of workforce personnel, a plaintiff need only show his duties were absorbed by someone outside the protected class).

In this case however, Widmar was not fired because of a reduction of workforce personnel; he was fired for poor performance. Moreover, even if the Court assumed Widmar's termination was due to a reduction of staff at Sun Chemical, the Seventh Circuit has found evidence of younger employees absorbing job duties insufficient to establish pretext. *See, e.g.*, *Merillat v. Metal Spinners Inc.*, 470 F.3d 685, 692-93 (7th Cir. 2006) (affirming summary judgment for the employer because the employee failed to establish that the employer's proffered reasons for termination were pretextual despite the fact her job responsibilities were assumed by a member outside the protected age group.). As such, the Court here does not find this evidence indicative of a discriminatory pretext. *See id.*

Accepting all of Widmar's arguments as true, the Court does not find he has presented evidence which suggests that Sun Chemical's proffered reasons for termination were a falsity. After examining the record, the Court does not find a triable issue exists regarding whether Widmar can demonstrate that but-for his age, he would not have been fired. *See Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 306 (7th Cir. 1996) (rejecting an

employee's argument that the court neglected to examine the evidence in its totality, because "[a]dding together a string of nothings still yields nothing."). Accordingly, the Court grants summary judgment to Sun Chemical on Widmar's age discrimination claim.

## B. Retaliation

Widmar's second claim is that Sun Chemical retaliated against him in violation of the ADEA by making defamatory comments about him after he filed a charge with the EEOC. Sun Chemical argues Widmar's retaliation claim fails because he cannot establish a *prima facie* case. The Court agrees.

To avoid summary judgment on his retaliation claim under the ADEA, Widmar can proceed under the direct or indirect method. *Szymanski v. Cnty. of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006). Under the direct method, he must show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012). Alternatively, under the indirect method, Widmar must show (1) he engaged in a statutorily protected activity; (2) he met Sun Chemical's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007).

Sun Chemical argues that under either method Widmar's claim must fail. Widmar disagrees. He appears to proceed under the direct method and argues that summary judgment is inappropriate because disputed issues of fact remain regarding whether the alleged defamatory comments were made.

As a preliminary matter, it is undisputed that Widmar's May 2010 EEOC charge of age discrimination constitutes a statutorily protected activity under the ADEA. Thus, the relevant inquiry is whether Widmar can establish that he suffered an adverse employment action after filing his EEOC charge and whether he can establish a causal connection exists between the filing of the charge and the adverse employment action.

Widmar contends that two employees from Sun Chemical accused him of "sabotaging" Sun Chemical. Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. at 25. Allegedly, these remarks were made after he filed his EEOC charge. He claims this constitutes an adverse employment action.

Even if the Court assumes the alleged comments were made (which Defendants vigorously deny) and assumes that such comments constitute an adverse employment action, Widmar has failed to establish a causal connection between the comments and EEOC charge. It is undisputed that Widmar filed his charge with the EEOC in May 2010. He claims that he was told "in the fall of 2010 . . . that sales staff from Rycoline had said that Mr. Widmar had sabotaged Rycoline products." Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J.

at 24. He states that this "is more than a sufficient causal connection to survive a motion for summary judgment." *Id.*

The Court disagrees. "A telling temporal sequence can establish the required nexus, but by telling we mean that the employer's adverse action follows fairly soon after the employee's expression. One day might do it, so too might one week." *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998) (citations omitted). Here, Widmar claims the defamatory remarks were made approximately four months after his EEOC charge. Without more, the Court finds this insufficient to create a causal connection between Widmar's protected activity and the adverse employment action. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 974 (7th Cir. 2012) ("[M]ere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue."); *see also Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (affirming summary judgment for the defendant employer on an employee's retaliation claim because the only evidence of a causal connection was the fact that the adverse action occurred four months after the protected activity.).

While Widmar claims he has also presented a "mosaic of circumstantial evidence probative of retaliation," the Court does not find such evidence convincing. Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. at 25. The only evidence Widmar references are

statements Sun Chemical made to the EEOC regarding Widmar's poor performance and poor communication skills. *Id.* Widmar contends these statements were false and claims this is evidence that Sun Chemical's explanation for Widmar's termination changed over time. However, there is nothing in the record to support such a claim. Instead, the record is replete with evidence that demonstrates that Roberts' initial complaints regarding Widmar's work performance were the reason for his termination.

As such, the Court does not find Widmar can establish a causal connection between his EEOC charge and the alleged disparaging remarks. Therefore, the Court grants Defendants' motion for summary judgment on Widmar's retaliation claim.

## C. Defamation

Widmar's final claim is that all Defendants are liable for defamation. Defendants contend they are entitled to summary judgment because Widmar has failed to present admissible evidence that establishes Ramsey or Knott made the alleged comments.

To state a defamation claim in Illinois, a plaintiff must present facts that demonstrate that (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) the publication caused damages. *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009) (citation omitted). A defamatory remark is "published" when it is communicated to someone other than the plaintiff. *Morris v. Harvey Cycle & Camper, Inc.,* 911 N.E.2d 1049,

1054 (Ill. App. Ct. 2009).  A statement is considered defamatory "if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broad. Corp.,* 607 N.E.2d 201, 206 (Ill. 1992).

There are two types of defamation under Illinois law – defamation *per se* and defamation *per quod*. *See Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 532 (7th Cir. 2009).  Statements that are obviously harmful to a plaintiff's reputation are considered defamation *per se*. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009).  Illinois recognizes five categories of statements that are considered actionable *per se*, including "those that prejudice a party, or impute lack of ability in his or her trade, profession or business." *Giant Screen Sports*, 553 F.3d at 532.

Widmar alleges he was defamed on two separate occasions.  The first incident involved an October 2009 email that Defendant Charles Ramsey sent to all of Rycoline and US Ink (a separate entity owned by Sun Chemical) that stated Widmar's department was "at fault for problems with the ink."  Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. at 25.  Defendants claim this incident is time-barred under Illinois' statute of limitations.  *See* 735 Ill. Comp. Stat. 5/13-201 (one year statute of limitations for defamation claims).  Widmar agrees, and withdraws this claim voluntarily.

The second instance of alleged defamation involves the comments Ramsey and Knott allegedly made regarding Widmar's intentional "sabotage" of Sun Chemical. Defendants claim they are entitled to judgment as a matter of law because Widmar failed to present admissible evidence that such statements were made.

The Court agrees with Defendants that several paragraphs in Widmar's statement of material facts cite to affidavits and portions of deposition testimony that contain inadmissible hearsay. *Marchioni v. Bd. of Educ.*, 341 F.Supp.2d 1036, 1049 (N.D. Ill. 2004); *see also Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) (a plaintiff must present admissible evidence to survive summary judgment). The Court finds Widmar's other support irrelevant or misplaced.

For example, Widmar references the amended declaration of Jose Sanchez as support for the fact that the sabotage comments were made. *See* Pl.'s Ex. M at ¶ 4. However, after reviewing Sanchez's declaration, there is no mention of comments of "sabotage." Instead, paragraph four states that Sun Chemical had a staff meeting after Widmar was terminated and at this meeting employees were informed that Widmar had been terminated because he "authorized a change in gum in a product formula, and subsequently allowed the product to be sold to customers which caused returns, complaints and subsequent costs to Sun Chemical." *See id*. Besides the fact that this does not mention anything about intentional sabotage, Widmar has admitted that he failed to quarantine a non-

compliant product in November 2009. *See* Pl.'s Resp. to Defs.' L.R. 56.1(a)(3) Statements of Material Fact at ¶ 29. This admission makes Sanchez's comments unpersuasive as support for a claim of defamation. *See Bradley v. Avis Rental Car Sys.*, 902 F.Supp. 814, 821 (N.D. Ill. 1995) (granting summary judgment to a defendant after the court determined that the alleged statements were either true, or capable of innocent construction).

The Court finds the same is true with respect to the deposition testimony of Victoria DiDomenico, another Sun Chemical employee. *See* Pl.'s Ex. L at 32-33. After reviewing the relevant portions of DiDomenico's testimony, the Court finds Widmar's allegations that other employees were accusing him of "sabotage" unsupported. *See id.* (stating that she did not remember "exactly" the conversation she had with Ramsey, but that Ramsey told her Widmar made a change that "screwed things up" for the company).

Ronald Petzel, a former customer of Sun Chemical, is the last individual Widmar contends informed him of the alleged sabotage comments. However, at his deposition, Petzel testified that he did not "recall having [a] conversation" with Widmar about employees at Sun Chemical saying that he "had been terminated . . . for sabotaging Rycoline Products" and stated that he "never relayed any of that [the alleged comments of sabotage], [and instead] believe[d] George [Widmar] assumed they made statements about it." Pl.'s Ex. Q (Petzel Dep.) at 66-68.

Because both DiDomenico and Petzel fail to provide testimony that the defamatory comments were made, Widmar seeks to admit his own deposition testimony regarding his version of his conversations with DiDomenico and Petzel. Widmar requests to admit this testimony under the residual exception to the hearsay rule. *See* FED. R. EVID. 807.

"Evidence is admissible under the residual exception only if it carries sufficient circumstantial guarantee[s] of trustworthiness as determined by such factors as (1) the probable motivation of the declarant in making the statement; (2) the circumstances under which it was made; and (3) the knowledge and qualifications of the declarant. *Wielgus v. Ryobi Technologies, Inc.*, 893 F.Supp.2d 920, 928 (N.D. Ill. 2012). As Defendants point out, Widmar's motivation in arguing for the admission of his double-hearsay testimony is the fact that he is seeking a significant amount of damages for his defamation claim. This undermines a guarantee of trustworthiness. *See id.* In addition, it is undeniable that Widmar lacks personal knowledge about the alleged sabotage comments, as the testimony he seeks to admit essentially amounts to a "she said, that he said" story. In light of the fact that both DiDomenico and Petzel have provided testimony about their conversations with Widmar and other Sun Chemical employees, the Court fails to see how Widmar's testimony provides greater *indicia* of reliability.

Because of this, and because the residual exception is meant to be construed narrowly, this Court declines to admit Widmar's double-hearsay testimony under Rule 807. *See Keri v. Board of Trs. of Purdue Univ.,* 458 F.3d 620, 631 (7th Cir. 2006); *see also Storlarczyk v. Senator Intern. Freight Forwarding, LLC*, 376 F.Supp.2d 834, 842 (N.D. Ill. 2005) (declining to admit a plaintiff's deposition testimony under the residual hearsay exception because the statements lacked guarantees of trustworthiness and because the plaintiff failed to rebut the presumption of inadmissibility). Since Widmar has failed to present sufficient facts which demonstrate that Ramsey or Knott, or any other Sun Chemical employee made defamatory statements about him, the Court grants all Defendants summary judgment on Widmar's defamation claim. *See Cody v. Harris*, No. 03-CV-934, 2004 WL 1254129 at *4 (N.D. Ill. June 8, 2004).

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED**.

_____
Harry D. Leinenweber, Judge
United States District Court

Date:5/15/2013